UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ICE HOUSE AMERICA, LLC, a Florida
limited liability corporation,

            Plaintiff,

v.                                              Case No. 3:05-cv-1294-J-33TEM

INNOVATIVE PACKAGING TECHNOLOGIES,
INC., a Georgia corporation; RICHARD
J. SODERMAN, an individual; M.
RUTLEDGE, INC., a Georgia
corporation d/b/a REDICO; MARK
RUTLEDGE, an individual; and JEFFREY
POORE, an individual,

            Defendants.
_____/

## ORDER

    This cause comes before the Court pursuant to the claims

construction hearing held on October 22 and 23, 2007, and pursuant

to two motions in limine[1] requesting that the Court not consider

certain evidence in construing the patent claims in this case.

**I.    Background**

    Ice House America and Innovative Packaging are competitors in

the automated ice-vending business. (Doc. # 90, at 9.)  Ice House

_____

    [1]Defendant's Motion in Limine to Exclude Dalbert U. Shefte was
filed on October 13, 2007.  (Doc. # 93.)  Ice House filed a
response on October 18, 2007.  (Doc. # 97.)  Ice House America,
LLC's Motion in Limine to Exclude All Evidence of Defendants on
"Ordinary Skill in the Art" and to Strike Portion of Defendant's
Markman Submission was filed on October 22, 2007.  (Doc. # 99.)
Innovative Packaging Technologies, Richard J. Soderman, and Jeffrey
Poore (collectively referred to herein as Innovative Packaging)
filed their response on November 8, 2007.  (Doc. # 112.)

has a patent -- U.S. Patent No. 6,932,124 -- for a certain type of ice-vending machine.  Ice House brought this action alleging that Innovative Packaging infringed the patent.  To determine whether Innovative Packaging infringed Ice House's patent, it is first necessary to determine the scope of protection the patent afforded.  See Novartis Pharm. Corp. v. Eon Labs Mfg., 363 F.3d 1306, 1308 (Fed. Cir. 2004).[2]  To this end, the Court conducted a Markman hearing at which evidence and argument was presented on the construction of claims in the '124 patent.

The parties disagree about the proper construction of three claims in the patent in suit.  A claim in a patent is a statement that "defines the scope of a patent grant and functions to forbid not only exact copies of an invention, but products that go to the heart of an invention . . . ."  Markman v. Westview Instruments, Inc., 517 U.S. 370, 373 (1996) (internal citations and quotation marks omitted).

> The function of claims is (a) to point out what the invention is in such a way as to distinguish it from what was previously known, i.e., from the prior art; and (b) to define the scope of protection afforded by the patent. In both of those respects, claims are not technical descriptions of the disclosed inventions but are legal documents like the descriptions of lands by metes and bounds in a deed which define the area conveyed but do not describe the land.

In re Vamco Mach. & Tool, 752 F.2d 1564, 1577 n.5 (Fed. Cir. 1985)

---

[2]The Court of Appeals for the Federal Circuit is the exclusive appellate court for patent cases.  28 U.S.C. § 1295(a)(1); see also Markman v. Westview Instruments, Inc., 517 U.S. 370, 390 (1996).

(emphases in original).  A patent's claims thus describe the outer bounds of the exclusive rights conveyed by the patent.  The parties disagree on the meaning of only seven terms within the three disputed patent claims.

The three disputed patent claims are reproduced below; disputed terms are underscored:

> 15.  A method for automatically delivering a plurality of pre-weighed ice pieces to a consumer which comprises:
>
>> automatically providing a plurality of loose ice pieces from a water source to a storage zone;
>>
>> holding a sufficient amount of ice pieces in the storage zone to provide a constant supply of loose ice pieces over an indeterminate period of time;
>>
>> transporting a plurality of ice pieces out of the storage zone, wherein the transporting comprises moving the ice pieces in a substantially horizontal direction, raising an end of the storage zone above a second opposite end, pushing or pulling the plurality of ice pieces, or any combination thereof, so the ice pieces are removed from the storage zone to be weighed;
>>
>> weighing a pre-selected portion of the ice pieces; and
>>
>> depositing the pre-selected portion of the ice pieces into a readily transportable container.
>
> . . .
>
> 17.  The method of claim 15, further comprising releasably securing an open end of the readily transportable container.
>
> • • •
>
> 19.  The method of claim 15, wherein the consumer must

> provide sufficient payment before the weighing and
> depositing of ice pieces into a readily transportable
> container, and it takes about 4 to 20 seconds to take ice
> from the storage zone and provide it into the readily
> transportable container.

U.S. Patent No. 6,932,124 col.16 (filed Nov. 19, 2003).

In Markman v. Westview Instruments, Inc., the Supreme Court held that the language of a patent claim must be construed by the court, and not the jury. 517 U.S. 370, 391 (1996). This holds true even where conflicting evidence is presented in support of alternative proposed constructions. Id. at 389–90. To that end, the Court conducted a Markman hearing in this case on October 22 and 23, 2007. At the hearing, the parties presented evidence on the meaning of disputed language in the patent in suit. The Court now determines the meaning of this disputed language.

Prior to the hearing, both Ice House and Innovative Packaging filed motions seeking to exclude certain evidence from consideration by the Court. (Doc. # 93; Doc. # 99.) The Court did not rule in limine, but rather allowed the evidence to be presented at the Markman hearing, and reserved ruling on the motions. The Court now denies both motions.

## II. Standard of Decision

To construe the language of a patent claim, it is first necessary to understand the general structure of a patent. A patent must contain a specification, which "shall contain a written description of the invention, and of the manner and process of

4

making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112.  In addition, the specification must "set forth the best mode contemplated by the inventor of carrying out his invention." Id.  Finally, the patent must contain claims. Id.  It is the claim language that sets the scope of protection granted by the patent.

The Court must determine what the claim language would have meant to a person of ordinary skill in the relevant art at the time of the invention. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).  The hypothetical person of ordinary skill in the art would have read the entire patent, and would understand the claim language in the context of the patent as a whole. Id.  Thus, the specification -- and other intrinsic evidence, such as the prosecution history and the language of other claims -- often provides the best indicator of the meaning of claim language. Id. at 1314-15.  Indeed, the specification is "the single best guide to the meaning of a disputed claim term" and is usually dispositive. Id. at 1315 (internal quotation marks omitted) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The Court must be careful, however, to avoid reading limitations from the specification into the claim. Id. at 1323. The claim is what limits the scope of the patent, not the specification. Id. at 1312.  The specification merely contains one

5

or more embodiments of the protected invention.  Id. at 1323.  The patent protects the entire scope of the invention as stated in the claim, not merely the example of the invention as stated in the specification.  See id.  The Court must be equally careful to avoid reading the claims too broadly, as would be done if the Court read claim language according to its dictionary definition rather than in the context of the specification.  Id. at 1321.

The Court may also consider extrinsic evidence.  Such evidence includes expert testimony and learned treatises.  The purpose of this evidence is "to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field."  Id. at 1318.  Unsupported testimony about the meaning of a claim term is not useful, however.  Id.  The decision to admit extrinsic evidence is within the sound discretion of the Court.  Id. at 1319.

**III. Discussion**

    **A.   Construction of the Patent Claims**

        **Term One:   "A method for automatically delivering a plurality of pre-weighed ice pieces."**

The first disputed term is in claim number 15 of the '124 patent.  The parties dispute the meaning of "plurality of pre-

weighed ice pieces."  Ice House contends this term means that more than one piece of ice is delivered to the consumer and the entire quantity of delivered ice is weighed prior to delivery to the consumer. (See Doc. # 90, at 17-19.)  Innovative Packaging argues this term means that each piece of ice is weighed, and a plurality of such ice pieces is delivered to the consumer.  (Doc. # 92, at 16.)  At first blush, it appears there is no difference between the two interpretations -- and in fact there is not.  Both call for weighing of the ice pieces prior to delivery to the consumer, and both call for the delivery of a plurality of ice pieces.  But Innovative Packaging has made clear that, under its interpretation, each ice piece is weighed separately.  (Doc. # 92, at 16 (stating that disputed claim language demonstrates "unambiguously that it is the individual ice pieces -- not the plurality of ice pieces -- that are pre-weighed"); Doc. # 92, at 17 ("[Ice House's] reliance on Mr. Miller's testimony that one skilled in the art would understand that the claim discloses weighing a plurality of ice pieces and not weighing each ice piece separately is entitled to no weight.").)

Innovative Packaging argues that the literal meaning of "plurality of pre-weighed ice pieces" requires that each ice piece is weighed separately.  Innovative Packaging cites Chef America, Inc. v. Lamb-Weston, Inc., 358 F.3d 1371 (Fed. Cir. 2004), for the proposition that the Court must construe the claim in accordance

with its literal meaning, even if one skilled in the art would recognize that meaning as an error. (Doc. # 92, at 17.)  From this position, Innovative Packaging concludes that "plurality of pre-weighed ice pieces" must be construed to mean "plurality of ice pieces that were weighed separately."

Innovative Packaging overreads Chef America and overlooks the central lesson of Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005).  In Chef America, the Federal Circuit construed a patent claim containing the following language: "heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F." 358 F.3d at 1371.  The court recognized that, if dough were actually heated to such a temperature, "it would be burned to a crisp" and utterly unusable.  Id. at 1373.  Despite this, the court explained that the words of the claim "are ordinary, simple English words whose meaning is clear and unquestionable."  Id. Thus, the court concluded that the claim language means "[t]he dough is to be heated to the specified temperature," rather than placed in an oven that has been heated to the specified temperature.  Id.

The court reached this conclusion, though, only after noting that there was no indication the claim language had a different meaning as used in this particular claim.  Id. Indeed, the court looked to the claims, the specification, and the prosecution history and determined that the claim language carried its ordinary

meaning as used in the claim. Id. at 1373-74. Finally, the court examined expert testimony that a person of ordinary skill in the art would read the claim language to mean the dough is placed in an oven heated to the specified temperature. Id. at 1375. The expert explained that one of ordinary skill would know heating dough to the specified temperature would destroy it, and accordingly would interpret the claim language as referring to the temperature of the oven. Id. According to the court, this testimony showed not that the claim language had a different meaning to those of ordinary skill in the art, but rather that a skilled baker would disregard the claim language in favor of his experience. Id. Thus, it is not the case that the Chef America court construed claim language according to its literal meaning despite indications that the language carried a different meaning in the particular claim. Instead, the court gave the language its ordinary English meaning because there were no indications that it carried a different meaning, and because the ordinary meaning was clear and unquestionable. Chef America does not stand for the proposition that the ordinary English meaning of claim language will govern in the face of indications from the patent itself that the language bears a different meaning.

Indeed, in Phillips v. AWH, the Federal Circuit emphasized that claim language must always be construed in the context of the entire patent, rather than in the abstract. 415 F.3d at 1315,

1321.  Innovative Packaging would have this Court divorce "plurality of pre-weighed ice pieces" from the rest of the '124 patent, which as a whole suggests the ice pieces are weighed together.  This is improper.  <u>Phillips</u> teaches that the Court must construe the claim language in the context of the patent as a whole.

Innovative Packaging's argument suffers from a more fundamental error, though.  The literal meaning of "plurality of pre-weighed ice pieces" simply does not include the requirement of separate weighing of the individual ice pieces.  Innovative Packaging makes much of the grammarian's conclusion that "pre-weighed" modifies "ice pieces."  This is true as far as it goes, but it says nothing about whether the ice pieces are pre-weighed together or separately.  Faced with a quantity of ice pieces, one might ask whether they have been pre-weighed.  The question could be truthfully answered in the affirmative whether the ice pieces were weighed individually or as a group.  Similarly, one might refer to a "plurality of green-painted marbles."  This phrase says nothing at all about whether the marbles were painted individually or as part of a group.  Essentially, Innovative Packaging argues that "plurality of pre-weighed ice pieces" means the same thing as "plurality of separately pre-weighed ice pieces."  It does not.

The Court then looks to the patent as a whole to determine whether, in context, "plurality of pre-weighed ice pieces" means

that the ice pieces are weighed separately.  On this inquiry, it is abundantly clear that the claim is not limited to separate weighing of individual ice pieces.   The specification itself discloses a machine that weighs the ice pieces together.  '124 Patent col.11 ll.42-54.  This is powerful evidence that "plurality of pre-weighed ice pieces" is not limited to separately pre-weighed ice pieces. A claim construction that fails to cover an embodiment from the specification "is rarely, if ever, correct."  <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Accordingly, the Court rejects Innovative Packaging's proposed construction and holds that "plurality of pre-weighed ice pieces" is not limited to separately weighed ice pieces.

> **Term Two:  "Holding a sufficient amount of ice pieces in the storage zone to provide a constant supply of loose ice pieces over an indeterminate period of time."**

The second disputed term is also in claim number 15.  The dispute is over the amount of ice held in the patented machine's storage zone.  Ice House contends the disputed term means about 2,000 to 20,000 pounds of ice.  (Doc. # 90, at 20.)  Innovative Packaging submits that it means an amount of ice sufficient that the machine will never run out of ice unless there is a malfunction.  (Doc. # 92, at 18.)  Thus, Innovative Packaging's position requires a machine with a built-in icemaker.  (Doc. # 92, at 19-20.)

Ice House supports its position by pointing to other parts of

the patent.  Specifically, Ice House identifies the specification's examples of a vessel capable of providing a constant supply of ice pieces over an indeterminate time.  (Doc. # 90, at 20-21.)  These examples include a vessel capable of holding over 500 pounds, a vessel capable of holding about 2,000 to 20,000 pounds, and a vessel capable of holding about 4,000 to 12,000 pounds.  Further, Ice House points to claim 2 (Doc. # 90, at 21), which claims "a holding vessel configured and dimensioned to contain about 2,000 to 20,000 pounds of ice pieces to provide a constant supply for an indeterminate time . . . ," '124 Patent col.14 ll.27-29.  According to Ice House, this intrinsic evidence shows that "holding a sufficient amount of ice pieces in the storage zone to provide a constant supply of loose ice pieces over an indeterminate period of time" means "holding about 2,000 to 20,000 pounds of ice pieces."

Innovative Packaging relies on the ordinary definition of "indeterminate," which means "not known in advance."  (Doc. # 92, at 18.)  It then calculates the amount of time an ice-vending machine could provide ice if its holding vessel were sized to hold 2,000 pounds of ice, and repeats the calculation for a vessel sized to hold 20,000 pounds.  According to Innovative Packaging, these calculations show that "indeterminate" does not describe a machine with either size holding vessel.  Thus, Innovative Packaging concludes that a machine capable of providing ice over an

indeterminate amount of time must have an ice-maker.[3]

The Court concludes that the claim language in question requires an ice-maker.  In the context of the entire patent, the term at issue does not mean a holding vessel of about 2,000 to 20,000 pounds.  Claim 2 expressly claims a machine with a holding vessel accommodating about 2,000 to 20,000 pounds of ice.  The language in question could have been similarly expressed, but it was not.  Moreover, the clause immediately preceding the disputed language reads, "automatically providing a plurality of loose ice pieces from a water source to a storage zone."  '124 Patent col.16 ll.3-4.  This language compels the conclusion that the apparatus of claim 15 includes an ice-maker.  While it is true that ice is water in a solid state, the '124 patent clearly refers to frozen water only as "ice" and never as "water."  <u>See</u> '124 Patent.  Thus, the water source in claim 15 is a source of liquid water.  This water must then be frozen and transported to the storage zone, and the whole process must be done automatically.  This requires an ice-

---

[3]Innovative Packaging states a confusing alternative argument. It says "no specific capacity requirements are appropriate." (Doc. # 92, at 19.)  Innovative Packaging merely states this position and makes no further effort to advance it.  Indeed, the position is at odds with the rationale supporting Innovative Packaging's argument that an ice-maker is required.  The length of time an ice machine can supply ice is readily calculable for any finite quantity of ice, given the machine's tempo of operation.  This is true whether or not that finite quantity is specified in the patent.  The Court rejects Innovative Packaging's alternative argument.

maker.[4]

True, the specification states more than once that an ice-maker is merely preferred, not required.  But this is expected, given that the patent also claims an invention that does not require an ice-maker.[5]

### Term Three:  "Substantially horizontal."

The third disputed term, also in claim number 15, is "substantially horizontal."  Ice House says this means anything from about minus twenty degrees from horizontal to about plus twenty degrees from horizontal, and also includes twenty-two to twenty-three degrees from horizontal.  Innovative Packaging argues the term includes minus twenty degrees and plus twenty degrees from horizontal and all angles in between.

"[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the patentee's lexicography

_____

[4]The Court rejects Innovative Packaging's central argument, however.  True, because the length of time an ice machine can supply ice is readily calculable for any finite quantity of ice, given the machine's tempo of operation, a machine capable of providing ice over an <u>indeterminable</u> amount of time must have an ice-maker.  But "indeterminate" does not carry precisely the same meaning as "indeterminable."  The Court declines to read "indeterminate" as meaning incapable of being calculated in advance.

[5]For example, claim 1 describes, "An automated ice vending apparatus comprising: a holding vessel configured and dimensioned to contain sufficient ice pieces to provide a constant supply for an indeterminate time . . . ."  '124 Patent col.14 ll.9-12.

governs." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1316 (Fed. Cir. 2005).   In this case, the specification defines "substantially horizontal":

> By "substantially horizontal" is meant a horizontal distance across a portion of the holding vessel . . . is traversed by a plurality of the ice pieces before they exit the holding vessel . . . via an aperture . . . . "Substantially" includes completely horizontal and can also mean, for example, that the ice generally moves at an average angle of no more than about 20 degrees, and preferably no more than about 10 degrees, from horizontal, either above or below horizontal.

'124 Patent col.8 ll.6–11.   Thus, "substantially horizontal" is defined by the patent itself to mean no more than <u>about</u> twenty degrees above or below horizontal.   So the question becomes whether "about twenty degrees above or below the horizontal" includes twenty-two to twenty-three degrees from horizontal.   Elsewhere, the patent provides, "The term 'about,' as used herein, should generally be understood to refer to both numbers in a range of numerals.   Moreover, all numerical ranges herein should be understood to include each whole integer within the range."   '124 Patent col.13 ll.62–65.   The '124 Patent itself thus defines "substantially horizontal" as from twenty degrees below horizontal to twenty degrees above horizontal, including twenty degrees above and below horizontal.   This definition does not include any values over twenty degrees.   By specifically limiting the meaning of "about" in the context of numerical ranges, the '124 Patent excludes the broader meaning "about" would ordinarily carry.

15

Ice House cites several cases for the proposition that "about" ordinarily includes values above and below the listed value. Ice House correctly cites these cases, but misses a critical point. These cases did not address a patent providing its own internal definition of "about." See Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211 (Fed. Cir. 1995); Eiselstein v. Frank, 52 F.3d 1035 (Fed. Cir. 1995); W.L. Gore & Assocs. v. Garlock, Inc., 842 F.2d 1275 (Fed. Cir. 1988); Kolene Corp. v. Motor City Metal Treating, Inc., 307 F. Supp. 1251 (E.D. Mich. 1969). This distinction prevents Ice House's cases from supplying the definition of "about." Instead, the '124 Patent supplies its own definition. It is that definition that governs. Phillips, 415 F.3d at 1316. As used in the '124 Patent, "substantially horizontal" means within twenty degrees of horizontal and does not include twenty-two or twenty-three degrees above horizontal.

**Term Four: "Weighing a pre-selected portion of the ice pieces."**

The fourth disputed term is again from claim number 15. The term is "weighing a pre-selected portion of the ice pieces." Ice House maintains that this means weighing ice pieces to a previously selected weight or amount. (Doc. # 90, at 25.) In other words, continuing to add ice pieces until the selected weight is reached. Innovative Packaging, however, contends that this means a portion of ice is selected before it is weighed. (Doc. # 92, at 23.) Innovative Packaging posits that the most logical way of selecting

16

this portion of ice prior to weighing is by volume. (Doc. # 92, at 25.)  Thus, Innovative Packaging asserts this term means that a portion of ice is first selected by volume and then weighed.

Ice House points to language elsewhere in the patent to show that "pre-selected" refers to the design of the machine.  Under this interpretation, "a pre-selected portion of the ice pieces" might be the sixteen-pound or twenty-pound quantity of ice pieces the machine was configured to deliver.  The specification describes a machine that continues to add ice pieces to a weighing device until the "pre-selected" weight is met.  '124 Patent col.11 ll.41-61.  Clearly, in this context, "pre-selected" refers to the weight of ice the machine is configured to dispense.  Additionally, the specification says the weighing device "meters out a pre-selected portion of the ice pieces and deposits the portion into a readily transportable container for use by the consumer."  '124 Patent col.5 ll.42-44.  Again, it is clear that ice pieces are added to the weighing device until a pre-selected weight is reached.  This is the meaning of "weighing a pre-selected portion of the ice pieces."  Essentially, "pre-selected portion" serves as a generic stand-in for the weight of ice the machine is configured to vend.

Innovative Packaging relies on a parsing of this stand-in, explaining that "portion" must mean "weight."  It then points out that "portion" is used throughout the patent in contexts where

17

"weight" would be inappropriate.  Thus, it reasons that "portion" must not mean weight, and "pre-selected portion" must not serve as a stand-in for whatever weight of ice the machine is configured to vend.  Instead of "weight," Innovative Packaging substitutes "volume."  Ultimately, this path leads Innovative Packaging to a machine that first selects a volume of ice pieces, and then weighs that volume.  But Innovative Packaging attempts too precise a parsing.  "Portion" is not used in the '124 Patent simply as code for "weight."  Rather, it is used more in line with its common meaning as a quantity or amount.  Consequently, the Court rejects Innovative Packaging's proposed construction.

Moreover, it is clear that the real dispute is over the term "pre-selected."  Ice House claims the quantity of ice is pre-selected when the machine is configured, while Innovative Packaging submits that the machine pre-selects the ice when it collects the ice by volume just prior to weighing.  Read in the context of the entire patent, though, it is clear that "pre-selected" refers to a selection made by the designer or operator of the machine, and does not describe a method by which the machine itself picks up the ice before weighing it.[6]  The disputed language carries the meaning advanced by Ice House.

---

[6]Benjamin Miller -- Ice House's expert in the field of ice-transferring, -dispensing, and -vending -- testified about the meaning of "pre-selected" to one of ordinary skill in the ice-vending art.  Miller explained that the term referred to the configuration of the ice machine by its manufacturer.

**Term Five:  "The pre-selected portion of the ice pieces."**

The final disputed term from claim number 15 is "the pre-selected portion of the ice pieces."  Ice House argues this term means the portion of ice pieces that was obtained by adding ice pieces until the desired weight was reached.  Innovative Packaging argues this means the portion of ice pieces that was selected by volume and then weighed.  As discussed above, Ice House's position is the correct one.

**Term Six:  "Releasably securing."**

The parties dispute the meaning of the term "releasably securing," used in claim number 17 to describe how the bag of ice should be sealed.  Ice House asserts that this term means sealing in such a way that the ice can be released.  (Doc. # 90, at 30.) Innovative packaging argues that the term means securing the bag in such a way that the <u>seal</u> can be released.  (Doc. # 92, at 26.)

Claim 17 reads, "The method of claim 15, further comprising releasably securing an open end of the readily transportable container."  '124 Patent col.16.  The meaning of this claim is readily apparent in the context of the parties' dispute.  <u>See</u> <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly

19

understood words."). The open end of the readily transportable container must be secured in such a way that that same end may later be opened. Thus, where bags are used as readily transportable containers, the open end of the bag must be secured in such a way that the same end may later be released. It is the "open end" that is "releasably secur[ed]," not the bag itself. This does not mean, however, that heat sealing is ruled out. So long as the same end that was heat sealed can later be reopened with only reasonable effort, heat sealing would be covered by this claim language.[7]

> **Term Seven: "The method of claim 15 wherein the consumer must provide sufficient payment before the weighing and depositing of ice pieces into a readily transportable container, and it takes about 4 to 20 seconds to take ice from the storage zone and provide it into the readily transportable container."**

This disputed language is the entirety of claim number 19. The parties disagree over whether the consumer who provides payment that initiates the process must be the same consumer who receives the ice that is the product of <u>that</u> process. In essence, the dispute is whether the patent covers a machine that prepares a bag of ice and stages it at the ready for a consumer. Ice House argues

---

[7]Benjamin Miller testified that, to one of ordinary skill in the art, the language of claim 17 means that the secured <u>end</u> of the container must be reasonably releasable by a consumer without tools. He envisioned a consumer standing next to his car ready to dump freshly purchased ice into an ice chest. The open end would not be releasably secured if such a consumer could not reasonably open it.

that this term covers such a machine, because the consumer who provides payment would start the process of preparing the next staged bag for the next consumer.  Innovative Packaging disagrees. It believes this term encompasses only machines that freshly bag the ice for each consumer.  Thus, Innovative Packaging argues, this term means the consumer's payment starts the process whose end result is a bag of ice for <u>that</u> consumer.

Ice House argues that the language of claim 19 never specifies the consumer to whom the ice must be delivered.  (Doc. # 90, at 32.)  It argues, a machine that stages ice would operate within the scope of claim 19 because a consumer paying for and receiving pre-staged ice would start the "weighing and depositing of ice pieces into a readily transportable container" for the next consumer.

Innovative Packaging counters that this reading of claim 19 is foreclosed by the specification.  Innovative Packaging identifies two portions of the specification that support its position. First, the specification reads, "An automated, fresh-bagged ice vending machine has now been invented that advantageously provides an apparatus, fresh-bagged ice, and methods for operating the apparatus that have been long desired in the ice vending art." '124 Patent col.4 ll.61-64.  According to Innovative Packaging, a machine that stages a bag of ice is inconsistent with the '124 Patent's focus on <u>fresh-bagged</u> ice.  Second, the specification describes a preferred embodiment of the invention, in which "the

entire process of taking ice pieces from the holding vessel, or storage zone, transporting the portion as needed, weighing it, and disposing it into a readily transportable container, and delivering that container to a consumer, takes about 4 to 20 seconds, preferably about 5 to 15 seconds." '124 Patent col.13 ll.12–18 (emphasis added). Innovative Packaging explains that this describes a process in which the bag that is filled with ice is dispensed immediately to the consumer. Indeed, the specification elsewhere describes immediate delivery of the filled bag of ice to the consumer. '124 Patent cols.12–13 ("In one embodiment, the ice pieces fall quickly and gravity immediately pulls the container . . . from the positioning device down a chute positioned underneath it. This permits ice to be delivered quite rapidly to the consumer . . . .").

Ice House is incorrect in its contention that claim 19 literally allows for the staging of ice. Claim 19 is a dependent claim incorporating the entirety of claim 15. See 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). Thus, when claim 19 refers to "the consumer," it is referring to the very same consumer described in claim 15, i.e., the consumer to whom a plurality of pre-weighed ice pieces is delivered. In short, the consumer who makes payment must be the same consumer to whom the ice is delivered. This conclusion is bolstered by the

specification, as discussed above.

**B.    The Motions in Limine**

At the claims construction hearing, Ice House presented the testimony of an experienced patent lawyer, Dalbert Shefte. Innovative Packaging's motion in limine seeks to prevent the Court from considering Shefte's testimony on the theory that expert testimony on a question of law is improper. (Doc. # 93.) At the hearing, the Court took the motion under advisement and explained that the Court would not consider Shefte's testimony if it found that such testimony was improper. As it turns out, the Court did not consider Shefte's testimony. Thus, Innovative Packaging's motion in limine is moot. As a result, the Court now denies Innovative Packaging's motion.

A similar situation is presented by Ice House's motion in limine. On various theories, Ice House seeks to exclude Innovative Packaging's evidence and argument on the level of ordinary skill in the art of ice vending. (Doc. # 99.) The Court had no occasion to reach the dispute in this case over what the level of ordinary skill in the art is. For that reason, Ice House's motion in limine is denied as moot.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1.    The claim language in dispute in this case shall be construed as stated in this Order.

23

2.     Defendant's Motion in Limine to Exclude Dalbert U. Shefte (Doc. # 93) is hereby DENIED as moot.

3.     Ice House America, LLC's Motion in Limine to Exclude All Evidence of Defendants on "Ordinary Skill in the Art" and to Strike Portion of Defendant's <u>Markman</u> Submission (Doc. # 99) is hereby DENIED as moot.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>22nd</u> day of July 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record

24